**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

**GEORGE DULIN**                                                                               **PLAINTIFF**

**V.**                                                      **CIVIL ACTION NO.: 4:07CV194-SA-DAS**

**BOARD OF COMMISSIONERS OF THE**
**GREENWOOD LEFLORE HOSPITAL**
**and ROBERT MOORE**                                                    **DEFENDANTS**

**MEMORANDUM OPINION**

Presently before the Court is Defendant Board of Commissioners of the Greenwood Leflore Hospital's Motion to Strike [117], Motion for Summary Judgment [91], and Motions in Limine [126,128], and Defendant Robert E. Moore's Motion to Dismiss [94] and Motion for Summary Judgment [93]. Also before the Court is Plaintiff's Motion for Summary Judgment [89]. The Court finds as follows:

### I. FACTS AND PROCEDURAL BACKGROUND

Greenwood Leflore Hospital is a community hospital run by the Defendant, the Board of Commissioners (Board). Two members of the Board are appointed by the Greenwood City Council and three members are appointed by the Leflore County Board of Supervisors.

Plaintiff George Dulin accepted the position of hospital board attorney in 1984 and served as board attorney until August 2006. As board attorney, Dulin was required to attend monthly meetings and to provide general advice to the Board. According to Dulin, in August 2005, President of the Board, Sammy Foster and Board member Alex Malouf were confronted by Defendant Robert Moore, who was then President of the Leflore County Board of Supervisors; David Jordan, who was a State Senator and a member of the Greenwood City Council; and Willie Perkins, a member of the

Legislature and the attorney for the Leflore County Board of Supervisors. It is pertinent to note Foster, Moore, Jordan, and Perkins are black, and Malouf is white. Dulin contends that at a Voter's League meeting, these three individuals, especially Moore pressured Board members Foster and Malouf to replace Dulin with a black attorney.

After reading of this meeting in the newspaper, Dulin called Board member, Alex Malouf. According to Dulin, Malouf told him to send in his letter of resignation because the Board planned to replace him. Dulin initially testified in his deposition that Malouf stated the Board planned to replace him with a black attorney, but Dulin later waivered, explaining he was not sure Malouf specifically said "with a black attorney."

In August 2006, the Board voted to replace Dulin as Board attorney. Dulin testified that the three black members, Sammy Foster, Gladys Flaggs, and Walter Parker, voted based on race, but it was his opinion the two white members, Brian Waldrop and Alex Malouf, went along with the vote to keep the peace. The Board hired W.M. Sanders, a black attorney. According to Foster, the Board only considered one other attorney for the position, Carlos Palmer, who also is black.

Dulin filed suit against the Board alleging age and race discrimination pursuant to Sections 1981 and 1983. Dulin also filed suit against Defendant Moore alleging age and race discrimination pursuant to Sections 1981 and 1983 and a supplemental state law claim for malicious interference with employment. Defendant Board counterclaimed for legal malpractice, breach of fiduciary duties, and breach of contract. Defendant Board has filed its Motion for Summary Judgment on Dulin's claims of race and age discrimination. Defendant Moore has filed his Motion to Dismiss and for Summary Judgment, and Plaintiff has filed his Motion for Summary Judgment on Defendant's Counterclaims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1983 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (internal citations omitted). The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." Morrison v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). But the nonmovant must "do more than simply show that there is metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Moreover, "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Anderson, 477 U.S. at 252, 106 S. Ct. 2505. The nonmovant must instead come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(E).

III. ANALYSIS

A.  Defendant Board's Motion to Strike Exhibits [117]

Defendant Board has moved to strike Exhibits H, L, and N submitted in support of Plaintiff's Opposition to Motion for Summary Judgment, and those portions of the brief that rely on said exhibits.

Plaintiff concedes the Court should not consider the newspaper editorials, Exhibits L and N, as they are not admissible summary judgment evidence. Thus, the Court grants Defendant's Motion to Strike Exhibits L and N.

Exhibit H is an article that was published in The Greenwood Commonwealth on August 18, 2005. Plaintiff relies on this article in opposition to the Board's Motion for Summary Judgment. The article stated that at the Voter's League meeting in question, Moore insisted Dulin should be replaced "to better reflect the county's and city's black majority." The articles cites Board President Sammy Foster's response to Moore's insistence as, "I think with time, these things will happen. I think what you said is something that needs to be done. I'm not going to say it is not going to happen. I have no problem making the change." Senator and Councilman David Jordan is quoted as saying that the position of the Hospital Board attorney should reflect the majority black population. Willie Perkins is credited as explaining that Dulin could be terminated immediately because he serves at the pleasure of the Board.

Defendant moves to strike this newspaper article as constituting admissible hearsay. Plaintiff argues that the newspaper article is not hearsay as the statements are not being used to prove the truth of the matter asserted, but just that the statements were in fact made. Plaintiff relies on two cases, Williams v. Valdosta, 689 F. 2d 964 (11th Cir. 1983) and Jauch v. Corley, 830 F. 2d 47 (5th

Cir. 1987), for this contention. This Court, however, finds these cases inapposite. Williams involved a plaintiff who sued the city because he was demoted after engaging in First Amendment activities, which involved speaking to the media about issues related to his employment. 689 F. 2d at 966. The Eleventh Circuit allowed the newspaper articles to be introduced as evidence plaintiff had engaged in a First Amendment activity. Id. at 973. In Jauch, a deputy sheriff sued the sheriff for defamatory statements made to the media by his chief deputy. 830 F. 2d at 49. The Fifth Circuit allowed the articles to be admitted as plaintiff's defamation claim turned on whether remarks were made to the media. Id. at 52.

Here, the article is not being used by Plaintiff merely to show that the statements were made. Rather, Plaintiff attempts to use this article to establish causation and motivation. Plaintiff must use admissible evidence to establish these elements. Duplantis v. Shell Offshore, Inc., 945 F. 2d 187, 191 (5th Cir. 1991) (holding that a plaintiff must respond to a motion for summary judgment with admissible evidence). The Court agrees that the newspaper article is hearsay and inadmissible. Roberts v. City of Shreveport, 397 F. 3d 287, 295 (5th Cir. 2005) (noting that newspaper articles are "classic, inadmissible hearsay"). Therefore, Defendant's Motion to Strike Exhibit H to Plaintiff's opposition response is granted. Accordingly, the Court will not rely on the newspaper article or portions of the brief that rely solely on the newspaper article. The striking of this article, however, does not preclude the Court from considering the deposition testimony of the individuals in attendance at the Voter's League meeting as proper summary judgment evidence.

B.   Defendant Board's Motion for Summary Judgment [91]

Plaintiff contends the actions of the Board in causing him to be replaced with a younger, less qualified black person violated the Civil Rights Act of 1991, as amended (42 U.S.C. § 1981).

Moreover, Plaintiff claims Defendant violated his equal protection rights under the 14th Amendment as Plaintiff's race was a substantial factor in his termination.[1] Plaintiff's action is authorized by 42 U.S.C. § 1983. The parties do not contest that the Board is a policymaker for the Greenwood Leflore Hospital, or that the Board voted to replace the Plaintiff.

Defendant first argues that § 1981[2] does not provide a separate independent cause of action against local government entities citing <u>Jett v. Dallas Independent School District</u>, 491 U.S. 701, 731, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989); thus, Plaintiff can only prevail if he can establish an equal protection violation under 42 U.S.C. § 1983. However, <u>Jett</u> merely holds that § 1983 constitutes the exclusive federal remedy for violation of rights secured by 42 U.S.C. § 1981. <u>Jett</u>, 491 U.S. at 733, 109 S. Ct. 2702. So although § 1981 does not provide a separate independent cause of action available against the Board, Plaintiff may pursue a § 1983 cause of action against the Board in order to assert his substantive rights under § 1981, which the Court finds Plaintiff has done. Specifically, Plaintiff brings a § 1983 action against the Board to remedy violations of his § 1981 substantive rights and equal protection rights.

In the Fifth Circuit, "[e]mployment discrimination claims brought under 42 U.S.C. § 1981 or § 1983 are analyzed under the evidentiary framework applicable to claims arising under Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. section 2000e *et seq*." <u>Lawrence v. Univ. of Texas Medical Branch at Galveston</u>, 163 F.3d 309, 311 (5th Cir. 1999). A plaintiff must show intentional discrimination by presenting either direct or circumstantial evidence of discrimination.

---

[1] Plaintiff initially claimed age discrimination but has since withdrawn those claims. Accordingly, the Court will not address those contentions.

[2] Section 1981 provides, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

6

Alvarado v. Texas Rangers, 492 F.3d 605, 611 (5th Cir. 2007). This Court will apply, absent direct evidence of discrimination based on race, the basic framework that the Supreme Court articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under that framework, the plaintiff must establish a prima facie case of discrimination. See id. at 802, 93 S. Ct. 1817.

If the plaintiff succeeds in showing a prima facie case, the defendant must then provide some legitimate non-discriminatory reason for the employee's rejection. See id., 93 S. Ct. 1817. Lastly, if the employer gives a legitimate, non-discriminatory reason for the employment action, the plaintiff must then prove, by a preponderance of the evidence, that the proffered reason was mere pretext for discrimination. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

As to plaintiff's prima face case, he "need only make a very minimal showing." Nichols v. Loral Vought Systems Corp., 81 F.3d 38, 41 (5th Cir. 1996). To establish his prima facie case of race discrimination, Plaintiff must show that (1) he is a member of a protected class; (2) he is qualified; (3) he experienced an adverse employment action; and (4) he was replaced by someone outside the protected class. McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. 1817; Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

Plaintiff Dulin is white, which is considered a protected category under § 1981 and the Equal Protection Clause of the Fourteenth Amendment. Byers v. Dallas Morning News, Inc., 209 F. 3d 419, 425-26 (5th Cir. 2000) (relying on Singh v. Shoney's, Inc., 64 F. 3d 217, 219 (5th Cir. 1995)). Dulin contends he was qualified for the position at the time of discharge, considering he had worked for Defendant for twenty-four years and never received any complaints about his job performance.

Although Defendant suggests criticism of Plaintiff's job performance, the Court cannot conclude he was not qualified. Plaintiff has satisfied elements three and four as the Board voted to remove Dulin from his position of Board Attorney, and he was replaced by someone outside the protected class, a black attorney. The Court determines that Plaintiff has established a prima facie case of race discrimination, as this burden is a relatively light one. See Nichols, 81 F. 3d at 41 (noting that plaintiff "need only make a very minimal showing" to establish prima facie case).

Once the employee sets forth a prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for the challenged employment action. The Board contends that Plaintiff was replaced because it lost trust in him due to inattentiveness in Board meetings and inconsistencies in advice. This reason is a legitimate, nondiscriminatory reason for the Board replacing the Plaintiff. The burden now shifts back to Plaintiff to demonstrate that the Board's articulated reason is a pretext for intentional discrimination.

In support of his argument that pretext exists, Plaintiff sets forth circumstantial evidence that he contends demonstrates race, rather than a lack of trust, was the true reason for his termination: (1) members of the hospital board were appointed and would be renewed in their positions in part by the black leaders that were advocating Plaintiff be replaced with a black attorney; (2) Moore pressured Board members Foster and Malouf at the Voter's League meeting to replace Plaintiff with a black attorney;[3] (3) Moore further discussed with two other Board members, specifically Flaggs and Parker, that Plaintiff needed to be replaced with a new attorney; (4) Plaintiff contends none of

---

[3] The Court relies on the deposition testimony of Malouf and Darden, as opposed to the stricken newspaper article. Bob Darden, the article's author who was present at the Voters League meeting, testified that Dulin's job performance was never discussed at the meeting. Rather, the meeting centered around the idea that "the board needed to reflect the community as a whole and Mr. Dulin being a white attorney was not representative of the community."

the Board members ever complained of his job performance until after the Voter's League meeting; (5) the reason given for his termination was vague and subjective – the Board had lost confidence in him; (6) the Board members have not provided any objective criteria as to why they hired the black attorney, W.M. Sanders; (7) the Board minutes reflect it only considered two attorneys for the position, and both were black; (8) although Board member Malouf suggested a white business law attorney for the position, from all indications, the Board never considered him; (9) and, despite the Board's vote to replace Plaintiff in August 2006 based on a loss of confidence, the Board retained his counsel and continued to pay Plaintiff until around March 2007.

Although a close call, the Court finds Plaintiff has presented sufficient evidence that creates a reasonable inference race was a determinative factor in him being replaced as Board attorney. The Court makes this decision based on the general premise that "summary judgment is an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent." Thornbrough v. Columbus and Greenville Railroad Co., 760 F. 2d 633, 640-41 (5th Cir. 1985) (abrogated on other grounds by St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed 2d 407 (1993)). Moreover, "determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the fact finder." Id., 113 S. Ct. 2742. Therefore, Defendant's Motion for Summary Judgment is denied.

C.  Defendant Moore's Motion to Dismiss [94] and Motion for Summary Judgment [93]

Plaintiff brings a Section 1983 action alleging that Robert Moore used his position as the President of the Leflore County Board of Supervisors to violate Plaintiff's substantive rights guaranteed by Section 1981 and his equal protection rights under the 14th Amendment. Plaintiff

9

also brings a supplemental state law claim against Moore for malicious interference with Plaintiff's employment. Defendant Moore has filed a Motion to Dismiss and Motion for Summary Judgment. Defendant Moore has asked the Court to consider information obtained during discovery; thus, the Court will address Defendant's Rule 56(c) Motion for Summary Judgment. The Court has determined that Defendant's Motion for Summary Judgment should be granted in part and denied in part; therefore, it is unnecessary for it to consider Defendant's Motion to Dismiss. Accordingly, Defendant's Motion to Dismiss [94] should be denied as moot.

Plaintiff claims Moore is liable in his individual capacity as he used the color of his office as a member of the Board of Supervisors to cause a violation of constitutional rights. Plaintiff's position appears to be that because Moore may have *influenced* the Board's decision to replace Plaintiff, Moore is responsible for the Board's action. The Court has not been provided case law by either party nor has the Court found case law that supports Moore being held liable in his individual capacity given the facts at issue under Section 1983 for violations of Plaintiff's substantive rights guaranteed under Section 1981 and his 14th amendment equal protection actions. Moore was a third-party to the decision to replace Plaintiff. Moore was not a member of the Board of Commissioners of the Greenwood Hospital that ultimately voted to replace Plaintiff. Moore "cannot be liable independently if [he] did not make the final decision." Beattie v. Madison School District, 254 F. 3d 595, 601 (5th Cir. 2001). As such, Defendant Moore's Motion for Summary Judgment as to Plaintiff's Section 1983 claims should be granted.

As for the supplemental state law claim, the Complaint characterizes this claim as malicious interference with Plaintiff's employment. A claim for malicious interference with employment is the same as asserting a tortious interference with contractual relations claim. See Roberson v.

Winston County, Miss., No. 1:00CV415, 2002 WL 449667 (N.D. Miss. 2002).

To establish tortious interference with a contract, the plaintiff must prove the same elements as those required to prove tortious interference with business relations, plus one additional element: malicious interference with a valid and enforceable contract. Levens v. Campbell, 733 So. 2d 753, 759-61. For tortious interference with business relations to lie in Mississippi, the plaintiff must prove: "(1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiff[] in [his] lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual loss and damage resulted." PDN, Inc. v. Loring, 843 So. 2d 685, 688 (Miss. 2003). "To sustain a claim for tortious interference with contract, the plaintiff[] must establish that an enforceable contract existed, and that the contract would have been performed, but for the interference of the defendant[]." Ward v. Life Investors Ins. Co., 383 F. Supp. 2d 882, 888 (S.D. Miss. 2005) (citing Par Indus. v. Target Container, Co. 708 So. 2d 44, 48 (Miss. 1998)).

Neither party thoroughly briefed the state law claim of tortious interference contract. Despite the parties' neglect, the Court finds there is a genuine issue of material fact as to whether Plaintiff's employment with the Board would have continued but for Moore's influence. Thus, Defendant Moore's Motion for Summary Judgment as to Plaintiff's state law claim is denied.

D.      Plaintiff's Motion for Summary Judgment Dismissing Counterclaim of Defendant Board[89]

On November 26, 2007, Plaintiff commenced the instant action against the Board alleging race discrimination in the replacement of Plaintiff as Board attorney. On July 3, 2008, the Board filed its Amended Answer and Counterclaim against Plaintiff alleging legal malpractice, breach of fiduciary duty, and breach of contract.

11

The Board's claim against Plaintiff involve three separate instances: (1) Plaintiff's alleged failure to pursue litigation against Dr. Jason Morris after Dr. Morris failed to honor his contractual obligation to remain on staff at Greenwood Leflore Hospital (the Hospital); (2) Plaintiff's alleged incompetence in his representation of the Hospital in the filing of a fraud complaint against Dr. Greg Mitchell in a bankruptcy proceeding; and (3) Plaintiff's alleged failure to follow the Board's instructions to deal with a legal issue that resulted in hospital property being sold at a tax sale. The Court will analyze each instance separately.

(1)     Dr. Jason Morris

In August 1996, Morris signed a recruiting agreement wherein the Hospital agreed to pay Morris two interest-free loans in the amount of $100,000 each. In exchange, Morris agreed to practice radiology in Greenwood, Mississippi for a minimum of five years beginning no later than August 1, 1997. The recruiting agreement also provided that Morris's loan debt would be forgiven on a prorated basis for each year he maintained his practice in Greenwood. Defendant contends that despite his promise, Dr. Morris moved to Cleveland, Mississippi in 2000.

The Board asserts that as a result of Dr. Morris's breach of his contractual obligations, the Board instructed Plaintiff to pursue collection of the $125,660.12 debt. Defendant contends Plaintiff sent one demand letter, but never followed up or otherwise pursued collection against Dr. Morris. Plaintiff, nevertheless, accepted his usual fee as compensation for the work he agreed to perform for the Board.

Plaintiff contends that after he sent the demand letter, he was contacted by an attorney representing Dr. Morris who informed Plaintiff that Dr. Morris was still providing his services to the Hospital. According to Plaintiff, because Dr. Morris's practice doesn't involve seeing patients

12

and merely involves interpretation of radiology films for other doctors, his physical presence in Greenwood was not necessary to render his services to Greenwood doctors. Based on the conversation with Dr. Morris's attorney, Plaintiff did not commence debt collection action against Dr. Morris as he was still providing his services to the Hospital.

Dr. Morris testified that he would be prejudiced by any attempt to bring a lawsuit against him seeking damages. He further testified that the Hospital's inaction led him to believe that his long-distance radiology consulting services was an acceptable way to fulfill his contract to practice in Greenwood.

Plaintiff asserts that the Board's claim against Dr. Morris is not time-barred, and therefore, the Board can still pursue its claim against Dr. Morris. The Board argues that although a claim against Dr. Morris is not barred by the statute of limitations, the doctrine of laches may apply to the claim. The Board argues that Plaintiff's neglect in asserting a claim against Dr. Morris and Dr. Morris's reliance on the Board's inaction all operate as a bar to bringing the claim now against Dr. Morris.

The Court finds the Board's claim against Plaintiff for legal malpractice as it relates to Dr. Morris is premature. The Board still has the opportunity to bring a debt collection action against Dr. Morris. If a future action by the Board against Dr. Morris is barred by the doctrine of laches, the Board then may bring a malpractice claim against Dulin if it wishes.

(2)     Dr. Greg Mitchell

The Board asserts that Plaintiff failed to timely file an objection to a motion which resulted in the dismissal of the Board's adversary proceeding objecting to the discharge of a debt owed to the Hospital by Dr. Mitchell. Plaintiff contends that although the Board's adversary proceeding

13

against Dr. Mitchell was dismissed as a result of improper service of process, the Board cannot prove that it would have prevailed in preventing the bankruptcy discharge of the debt it alleges was owed by Dr. Mitchell.

In late March of 1997, Dr. Mitchell entered into a recruiting agreement with the Hospital similar to the recruiting agreement entered into by Dr. Morris. The agreement stated that in return for Dr. Mitchell practicing obstetrics and gynecology in Greenwood, Mississippi for at least five years beginning no later than August 1, 2001, the Hospital would provide him with two interest-free loans in the amount of $50,000 each and a monthly stipend of $1500 while he was completing his medical training. The recruiting agreement also provided that Dr. Mitchell's loan debt would be forgiven on a prorated basis for each of the five years he maintained his medical practice in Greenwood.

In early 2001 before providing services to the hospital, Dr. Mitchell received a termination agreement and promissory note in the mail from the Hospital. The agreement stated that the Hospital desired to terminate Dr. Mitchell's recruiting agreement as the need for his services anticipated by the Hospital in 1997 never materialized. Dr. Mitchell signed the termination agreement and the promissory note.

In August 2001, Dr. Mitchell filed for bankruptcy. Then in December 2001, Plaintiff filed a complaint on behalf of the Hospital objecting to the discharge Dr. Mitchell's debt owed to the Hospital under the terms of Dr. Mitchell's recruiting agreement. The Hospital asserted that the debt owed by Dr. Mitchell was non-dischargeable in bankruptcy under 11 U.S.C. § 523(a)(2)(A) as Dr. Mitchell procured the debt through false representations and actual fraud. The Hospital's complaint was dismissed for improper service of process.

To recover for legal malpractice, the Board must prove by a preponderance of the evidence the following: "(1) [e]xistence of a lawyer-client relationship; (2) [n]egligence on the part of the lawyer in handling his client's affairs entrusted to him; and (3) [p]roximate cause of injury." Lancaster v. Stevens, 961 So. 2d 768, 771 (Miss Ct. Appt. 2007) (citing Hickox v. Holleman, 502 So. 2d 626, 633 (Miss. 1987)). The Board has shown the existence of a lawyer-client relationship and negligence on the part of Plaintiff in not following the bankruptcy rules which resulted in dismissal of the claim. However, to prove proximate causation, the Board must show that but for Plaintiff's negligence, the Board would have been successful in the prosecution or defense of the underlying claim. Hickox, 502 So. 2d at 634.

The Board objected to the discharge of Dr. Mitchell's debt based on the contention that the debt was non-dischargeable under 11 U.S.C. § 523(a)(2)(A), which provides a debt is not discharged in bankruptcy if it was "obtained by false pretenses, a false representation, or actual fraud." The Fifth Circuit stated, without distinguishing between the different torts, that in order for a debt to be non-dischargeable under this section, the creditor must show that: (1) the debtor made a representation; (2) the debtor knew it was false; (3) the representation was made with the intent to deceive the creditor; (4) the creditor actually and justifiably relied on the debtor's representation; and (5) the creditor sustained a loss as the proximate result of his or her reliance. In re Acosta, 406 F. 3d 367, 371 (5th Cir. 2005).

The Board's Complaint Objecting to Discharge of Debtor reads in relevant part:

As a result of the fraudulent acts of the Defendant, in promising and agreeing to practice in Greenwood, Mississippi, and subsequently refusing to do so, but retaining all monies paid to him by Plaintiff as an inducement for him to practice in Greenwood, Mississippi as promised, Plaintiff has been damaged and Defendant has been unjustly enriched in the sum of $172,000.00. The Defendant obtained the said money from the Plaintiff through false representations and actual fraud and

15

consequently is not entitled to a discharge of the indebtedness owed Plaintiff.

The Board has presented no evidence to the Court to show that but for Plaintiff's negligence, the Board would have been successful in its claim against Dr. Mitchell. The fraudulent representation the Board contends Dr. Mitchell made was that he would practice medicine in Greenwood, Mississippi, and he subsequently refused to do so. However, the provisions of the termination agreement signed by Dr. Mitchell explain that the Hospital desired to terminate the recruiting agreement as the need for Dr. Mitchell's services did not materialize as anticipated. The Board has not come forward with any proof Dr. Mitchell obtained the loan through false representations or fraud. Accordingly, Plaintiff is entitled to summary judgment on the Board's claim for legal malpractice and breach of duties as it relates to Dr. Mitchell.

(3)   Tax Sale/Property Redemption

Plaintiff first argues that the Board's tax sale/property redemption claim should be dismissed as the Complaint fails to satisfy the requirements of notice pleading under Federal Rule of Civil Procedure 8. Plaintiff asserts he had no knowledge of the Board's tax sale allegation until it was first mentioned during the Board's Rule 30(b)(6) deposition on May 7, 2009. The Board responds that its counterclaim alleges that Plaintiff was negligent, breached his fiduciary duty, and breached his contract with the Board. The Board contends its counterclaim does not limit itself to any particular incident or incidents. Further, the Board asserts documents related to the tax claim were produced to Plaintiff on June 5, 2008, giving Plaintiff ample notice that the Board intended to seek recovery related to the tax sale. The Court finds that although the Board's counterclaim is very general, the pleadings at least satisfy Rule 8(a)(2) which merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(A)(2).

The Board alleges that it was forced to redeem two parcels of hospital property after a tax sale as a result of Dulin failing to negotiate with physician tenants regarding whether they or the Hospital would pay the taxes assessed to the property. Plaintiff testified that in response to the Board's request that he look into the tax issue related to the Hospital's leased property, he met on several occasions with the tax assessor and the chancery clerk to discuss the issue. Further, Plaintiff procured an Attorney General Opinion stating that taxes would not be owed by the Hospital but could be assessed against the leasehold interest owned by the tenant physicians. Plaintiff informed the tenant physicians that the property tax would be their responsibility. Plaintiff argues that the Board has presented no evidence that Plaintiff was negligent in any way in determining whose responsibility it was to pay the property taxes at issue. The Court agrees and finds the Board's response offers no evidence to refute Plaintiff's testimony or to show he acted in such a way which could be considered a breach of duties owed to the Board.

Plaintiff further argues that the Hospital's ownership of the property was not affected by the tax sale. Because the property taxes were assessed to the leasehold interests owned by the clinics, only the leasehold interests were sold at the tax sale. Plaintiff asserts there is no evidence that there was any need for the Hospital to pay the taxes and fees in order to redeem the property. As there is no evidence that the Hospital was harmed by the sale of the leasehold interest in the property, Plaintiff's position is the Hospital's redemption of the property was voluntary and unnecessary. Moreoever, Brian Waldrop, the 30(b)(6) deponent, testified that the Board was unaware whether the Hospital had been reimbursed by the clinic.

The Board failed to address these arguments in its response to summary judgment. The Board simply argues that "[b]ecause the physicians failed to pay the taxes and because Dulin failed

17

to follow up on the matter, the hospital eventually had to redeem the property at a tax sale." The Board is unable to show that Plaintiff was negligent in any way or that the Board sustained damages as a result of the tax sale. Accordingly, Plaintiff is entitled to summary judgment as to the Board's tax sale/redemption counter-claim.

(4)  Breach of Contract

During the course of Dulin's representation of the Board, he received a fee of approximately $18,000 per year. According to the Board, Dulin agreed to handle matters on behalf of the Board in return for this fee, including attending board meetings and handling other matters as they be assigned by the Board from time to time. Dulin contends that contrary to the Board's unsupported allegations, he was paid a $1500 per month flat fee in exchange for his attendance at board meetings and legal advice he would give when he was periodically called or visited by persons associated with the Board. Dulin testified that he received extra compensation for any other matters he handled for the Board.

According to Dulin, all three of the Board's malpractice allegations concern matters which were not covered by the monthly flat fee arrangement between he and the Board. Further, Dulin contends there is no evidence he was paid an extra fee in return for his involvement in the three matters at issue. Dulin concludes that since the Board never paid Dulin a fee for these services, Dulin never received a fee for which the Board may be reimbursed. The Board has provided no evidence to rebut Plaintiff's contention. The Court finds there is no genuine of issue of material fact as to Defendant's breach of contract counter-claim. Therefore, Plaintiff is entitled to summary judgment as a matter of law on this issue.

E.   Motion in Limine to Exclude Newspaper Items [126]

Defendants move to exclude from trial the newspaper article dated August 18, 2005, that was the subject of the motion to strike discussed herein. The newspaper article is inadmissible at trial for the same reasons it is inappropriate as summary judgment evidence. Roberts, 397 F. 3d at 295 (stating that newspaper articles are "classic, inadmissible hearsay"). Accordingly, Defendants' Motion in Limine to Exclude the Newspaper [126] is GRANTED.

F.   Motion in Limine as to Testimony of Newspaper Editors and their Editorials [128]

Defendants also seek to exclude from trial the testimony of the newspaper editors and their editorials. The Court finds the editorials are inadmissible for the same reasons the newspaper article is inadmissible. As for the testimony of the newspaper editorial authors, Defendants contend the authors of the editorials do not qualify to give opinion testimony under Federal Rules of Evidence 701, and any attempt to introduce this testimony will usurp the function of the Court and invade the province of the jury.

> Federal Rule of Evidence 701 provides
>
> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Defendants argue that any testimony offered by the authors of the editorials would concern facts that percipient witnesses will know and will concern facts not in need of translation into lay language. Plaintiff responds that the authors' opinions have probative value. Plaintiff contends that editors of local newspapers pay close attention to public affairs, and it is their job to be aware of

19

what persons influence local government. Moreover, Plaintiff argues they are cognizant of activities of public organizations, such as those of the Voter's League, and whether racist policies of such a league may influence government bodies. Plaintiff submits that if the editors of the editorials can demonstrate a factual basis for their opinion, such matters as their observations about previous Voter's League member's racist behaviors and their observations about the influence of advocates of racism should be admitted.

The Court finds that the author's editorial opinions lack probative value to the present claims. The author's were not in attendance at the Voter's League meeting in question. Testimony of previous Voter's League meetings and their observations about the influence of advocates or racism are not relevant and would only serve to confuse and mislead the jury. Therefore, Defendants' Motion in Limine as to the editorials and testimony of the editorial opinion authors is GRANTED.

## IV. CONCLUSION

Based on the foregoing, Defendant Board of Commissioners of the Greenwood Leflore Hospital's Motion to Strike [117] is GRANTED and its Motion for Summary Judgment [91] is DENIED. Defendant Robert Moore's Motion to Dismiss [94] is DENIED AS MOOT and Motion for Summary Judgment [93] is GRANTED IN PART and DENIED IN PART. Plaintiff's Motion for Summary Judgment Dismissing Counterclaims [89] is GRANTED. Defendants' Motions in Limine [126,128] are GRANTED

A separate order in accordance with this opinion shall issue this day.

SO ORDERED, this the 8th day of September 2009.

                                            **/s/ Sharion Aycock**
                                            **UNITED STATES DISTRICT JUDGE**